**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 10-156-DLB**

**EDWARD & JOHANNA MEIMAN**  PLAINTIFFS

vs.  **MEMORANDUM OPINION AND ORDER**

**KENTON COUNTY, KENTUCKY, ET AL.,**  DEFENDANTS

\* \* \* \* \* \* \*

This action arises from Plaintiffs' allegations that Defendant Municipalities and Insurers are improperly charging insurance policyholders a tax on insurance premiums. Plaintiffs seek declaratory judgment and corresponding injunctive relief that (1) the tax must be paid by Defendant Insurers rather than the policyholders; or, (2) in the alternative, that the tax is being improperly assessed based on the policyholders' zip code, rather than the location of the insured risk. Multiple motions are pending before the Court. This Order adjudicates only Plaintiffs' Motion to Remand (Doc. # 23), which has been fully briefed and is ripe for review. (Docs. # 28, 29, 30, 38). For the reasons that follow, Plaintiffs' Motion to Remand is **denied**.

**I.    BACKGROUND**

Plaintiffs originally filed a Class Action Complaint in Kenton Circuit Court on June 19, 2008 alleging that Kenton County, as representative of a class of Municipal Defendants, improperly assessed a tax, enacted under KRS § 91A.080, on insurance premiums and, consequently, received and retained taxes to which it was not entitled. (Doc. # 1-23 at 55).

1

Plaintiffs subsequently filed a First Amended Class Action Complaint naming Franklin County a Defendant. (Doc. # 1-23 at 6).

Thereafter, Plaintiffs filed motions for class certification and summary judgment in state court. The parties did not brief the Motion for Class Certification, agreeing that it should be held in abeyance pending disposition of Plaintiffs' Motion for Summary Judgment. Rather than adjudicate Plaintiffs' Motion for Summary Judgment, however, Kenton County Circuit Judge Sheehan held that the insurance companies which collected (and retained a percentage of) the disputed taxes were, under Kentucky law, indispensable parties to the action. (Doc. # 30-1 at 5). He reasoned that "[a] ruling in the Meimans' favor would, in effect, require these insurance companies to deduct such taxes from their corporate bottom lines." (Doc. # 30-1 at 4). Judge Sheehan concluded that requiring the insurance companies to shoulder such a burden "without ever having been provided the opportunity to argue otherwise. . . . simply would not be fair." (Doc. # 30-1 at 4).

In response to Judge Sheehan's ruling, Plaintiffs filed their Third Amended Class Action Complaint naming Allstate Insurance Company and Travelers Insurance Company as Defendants and proposing a class of Defendant Insurers. (Doc. # 1-1 at 52, 63). By agreed order, Standard Fire Insurance Company and the Automobile Insurance Company of Hartford, Connecticut (AIC-Hartford) were substituted for Travelers Insurance Company. (Doc. # 1-1 at 6).

With the consent of Defendants Standard Fire and AIC-Hartford (Doc. # 1-25 at 2),[1] Defendant Allstate removed the case to federal court on July 16, 2010. (Doc. # 1).

---

[1] Though Defendants Kenton and Franklin counties did not expressly consent to removal, both formally adopted Defendant Insurers' Responses in opposition to Plaintiffs' Motion to Remand. (Doc. # 29).

Defendants Allstate, AIC-Hartford, Standard Fire, and Franklin County then filed Motions to Dismiss. (Docs. # 16, 20, 22). Shortly thereafter, Plaintiffs moved to remand the case to Kenton Circuit Court, arguing that several exceptions to the Class Action Fairness Act (CAFA) divest the federal court of subject matter jurisdiction. (Doc. # 23). This case was reassigned to the undersigned on December 30, 2010. (Doc. # 39).

## II.   DISCUSSION

### A.   Federal Subject Matter Jurisdiction Under CAFA

CAFA confers federal subject matter jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Additionally, CAFA does not apply to class actions in which "all proposed plaintiff classes in the aggregate is less than 100," and thus requires that the proposed plaintiff class be 100 persons or more. § 1332(d)(5)(B).

CAFA eliminates a substantial hurdle normally imposed by § 1332(a), the basic diversity statute, by permitting minimal diversity of citizenship, rather than requiring absolute diversity. Section 1332(d)(6) also expands federal jurisdiction by aggregating the class members' claims to determine whether the matter in controversy exceeds $5 million.

CAFA does not change the removing party's burden of establishing federal jurisdiction by a preponderance of the evidence. *Smith v. Nationwide Prop. & Cas. Ins. Co.*, 505 F.3d 401, 404 (6th Cir. 2007) (quoting *Brown v. Jackson Hewitt, Inc.*, No. 1:06-cv-2632, 2007 WL 642011, at *2 (N.D. Ohio Feb. 27, 2007)). Moreover, "all doubts as to the propriety of removal are resolved in favor of remand." *Id.* at 405 (quoting *Jacada, Ltd. v.*

3

*Int'l Mktg. Strategies, Inc.,* 401 F.3d 701, 704 (6th Cir. 2005)). Defendants have met their burden at the removal stage by showing that the amount in controversy exceeds $5 million, minimal diversity exists, and the proposed plaintiff class totals at least 100 persons.

First, Plaintiffs have shown that it "is more likely than not" that aggregate damages would exceed $5 million. *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 872 (6th Cir. 2000). Though Plaintiffs seek equitable relief and costs, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). Generally, in the Sixth Circuit, "the amount in controversy should be determined 'from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect.'" *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 376 (6th Cir. 2007) (quoting *Buckeye Recyclers v. CHEP USA*, 228 F.Supp.2d 818, 821 (S.D.Ohio 2002)).

Plaintiffs' Third Amended Complaint seeks equitable relief, including (1) declaratory judgment that Defendant classes are prohibited from collecting the tax imposed by KRS § 91A.080 from policyholders; or, in the alternative, (2) declaratory judgment that members of the Defendant classes be required to make an accounting to determine whether the taxes are being collected in accordance with the statute; and (3) appropriate injunctive relief requiring compliance with the declaratory judgment.

While Plaintiffs do not place a direct value on their requested relief, Defendant Allstate provided the declaration of Sam Collins, an Associate Consultant at Allstate who is responsible for remitting payments to state and local taxing authorities in various states, including Kentucky. (Doc. # 1-28 ¶ 1). Collins stated that during 2008 and 2009, Allstate collected and remitted to local governments approximately $9.7 million in insurance

premium taxes imposed pursuant to KRS § 91A.080.  (Doc. # 1-28 ¶ 2)

Additionally, Defendants observe that the plaintiffs in *Kendrick v. Standard Fire Ins. Co.*, No. 2:06-cv-141-DLB, 2007 WL 1035018 (E.D.Ky. March 31, 2007), a similar case that was previously before this Court, sought relief regarding only the taxes that were allegedly incorrectly charged to policyholders.  By contrast, Plaintiffs here request that the Court allocate (by declaratory judgment and injunction) *all* premium taxes due and owing on the insured risks at issue in Kentucky—a value of more than $9.7 million.  Consequently, as in *Kendrick*, the Court can reasonably deduce that the matter in controversy exceeds $5 million.  *See Kendrick*, 2007 WL 1035018, at *3.

There is also minimal diversity between the parties because at least one member of the Plaintiff class is a citizen of a state different than at least one Defendant.  Proposed Defendant classes currently include citizens of, at least, Kentucky, Illinois, and Connecticut. Plaintiffs propose a Plaintiff class in their Third Amended Complaint that includes "[a]ll persons or entities in the Commonwealth of Kentucky who paid a surcharge on their insurance premiums pursuant to a tax imposed by a local government pursuant to the provisions of KRS 91A.080."  (Doc. # 1-1 at 62, ¶ 31).  Because Defendants include non-Kentucky citizens, CAFA's minimum diversity requirement will be satisfied if at least one Plaintiff is a citizen of Kentucky.  The Court is aware that residency is not the same as citizenship for purposes of federal subject matter jurisdiction, but finds that Plaintiffs' proposed class is sufficient to establish that at least one Plaintiff (likely the Meimans themselves) is a citizen of Kentucky, so as to establish minimum diversity under CAFA. *See McMorris v. TJX Cos., Inc.*, 493 F.Supp.2d 158, 163-64 (D. Mass. 2007) (distinguishing between residency and citizenship and finding a reasonable probability that

at least one member of a class consisting of "residents" of Massachusetts who purchased an item at the defendant's stores was also a citizen of that state for the purpose of establishing minimal diversity under CAFA).

Finally, Plaintiffs' proposed class includes at least 100 persons. This threshold is satisfied by the declaration of David R. Border, Allstate's employee who is responsible for maintaining "information regarding Allstate policy holders within the state of Kentucky." (Doc. # 1-29 ¶ 1). He stated that during 2008 and 2009, Allstate had an approximate average of 75,327 auto policyholders with insured risks in Kentucky. Of these policyholders, an average of 66,138 paid a surcharge on their insurance premiums pursuant to the tax at issue in this case. (Doc. # 1-29 ¶ 2-3). The proposed class definition—which includes "all persons or entities in the Commonwealth of Kentucky who paid a surcharge on their insurance premiums pursuant" to the tax at issue here—in conjunction with Allstate's declaration, satisfies the Court that the proposed Plaintiff class includes at least 100 members. (Doc. # 1-1 at 62 ¶ 31).

Because Defendants have established by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million, that there is minimal diversity of citizenship, and that the proposed Plaintiff class includes at least 100 persons, CAFA's general jurisdictional requirements are satisfied. This conclusion is supported by Plaintiffs' admission that these three CAFA requirements are "likely" satisfied. (Doc. # 23-1 at 13).

### B. Exceptions to CAFA Jurisdiction

CAFA also includes mandatory and discretionary exceptions, which either give this Court discretion to remand, or divest it of jurisdiction, thus requiring remand. When this Court first addressed these exceptions in *Kendrick*, it observed that "there has been some

difference of opinion on who bears the burden of establishing these exceptions." *Kendrick*, 2007 WL 1035018, at *4. After review of the circuits that had addressed the issue, and the relevant legislative history, *Kendrick* found that the plaintiffs, the party seeking remand, had the burden of demonstrating that one of CAFA's exceptions applied. *Id.* Although the Sixth Circuit has not yet addressed the question, the Third Circuit recently observed that the courts of appeals have "uniformly concluded" that after general CAFA jurisdiction has been established, the burden shifts to the party objecting to federal jurisdiction to show an exception to CAFA. *Kaufman v. Allstate N.J. Ins. Co.*, 561 F.3d 144, 153 (3d Cir. 2009); s*ee also Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 26 (2d Cir. 2010) ("However, once the general requirements of CAFA jurisdiction are established, plaintiffs have the burden of demonstrating that remand is warranted on the basis of one of the enumerated exceptions"); *Westerfeld v. Indep. Processing, LLC*, 621 F.3d 819, 822-23 (8th Cir. 2010) (same). Thus, Plaintiffs have the burden of showing that one or more of CAFA's exceptions applies.

Plaintiffs argue that two CAFA provisions mandate remand, and a third provision permits remand at the Court's discretion. First, the "home state" exception requires remand if "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." § 1332(d)(4)(B). Second, the state action exception[2] also requires remand if "the primary

---

[2] Plaintiffs vehemently contend that the state action exception found in § 1335(d)(5)(A) is a prerequisite, not an exception, to federal jurisdiction. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 n.3 (9th Cir. 2007) ("satisfaction of § 1335(d)(5) serves as a prerequisite, rather than as an exception, to jurisdiction under § 1335(d)(2)). Defendants cite *Frazier v. Pioneer Americas LLC*, 455 F.3d 542, 546 (5th Cir. 2006), and several other cases, in rebuttal, for the proposition that "plaintiffs have the burden to show the applicability of the §§ 1332(d)(3)-(5) exceptions when jurisdiction turns on their application."
It appears that the Sixth Circuit has not ruled on whether the home state "rule" found in

defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief." § 1332(d)(5)(A). Finally, the Court may, in its discretion, decline jurisdiction if "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of" a range of factors. § 1332(d)(3). Common to all three provisions is the term, "the primary defendants." And, as is evident from the statutory language, determining which defendants are the primary defendants can be dispositive of whether any of these exceptions apply.

## C. Identifying "The Primary Defendants"

Neither CAFA nor, it appears, the Sixth Circuit has defined "the primary defendants." Thus, as in *Kendrick*, CAFA's legislative history is relevant. The Senate Report, issued after CAFA was enacted,[3] explains that "the primary defendants" is intended to reach:

> those defendants who are the real 'targets' of the lawsuit—i.e., the defendants that would be expected to incur most of the loss if liability is found. Thus, the term 'primary defendants' should include any person who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes (as opposed to simply a few individual class members).

---

§ 1332(d)(5)(A) is an "exception" or a "prerequisite" to federal jurisdiction. And this Court need not make such a ruling because, for the purposes of Plaintiffs' Motion to Remand, the primary difference between "exception" and "prerequisite" is which party bears the burden of establishing its application or absence. Regardless of which party bears the burden, the evidence here demonstrates that Defendant Insurers are primary defendants and, therefore, the state action exception (or prerequisite) does not disturb this Court's jurisdiction.

[3] The fact that the Senate report was issued ten days after CAFA was enacted has led some courts to conclude that "its probative value for divining legislative intent is minimal." *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 58 (2d Cir. 2006). However, other courts, including this one in *Kendrick*, 2007 WL 1035018, at *5, have found it useful. *See Moua v. Jani-King of Minn., Inc.*, 613 F.Supp.2d 1103, 1108 n.4 (D.Minn. 2009) (collecting cases in which the Senate Report has been considered).

S.Rep. No. 109-14, at 43-44 (2005)

Plaintiffs argue that under this definition, Defendant Municipalities are the only primary defendants in this action. First, Plaintiffs contend that the Defendant Municipalities are the "real targets," of the lawsuit; second, they argue that Defendant Municipalities would be "liable to the vast majority of the members of the proposed classes." Notwithstanding Plaintiffs' arguments, as this Court observed in *Kendrick*, "determining who are 'primary defendants' is problematic in this case, where a defendant class has been proposed but whose membership has yet to be identified." 2007 WL 1035018, at *5. This difficulty is compounded here because Plaintiffs have proposed a Plaintiff class and two Defendant classes; additionally, Plaintiffs have argued an alternative basis for relief with an accompanying proposed Plaintiff subclass. Nonetheless, the Court considers Plaintiffs' arguments in turn.

Plaintiffs first contend that Defendant Municipalities are the "real targets" of this action because they retain 85% of the taxes collected and Defendant Insurers retain only 15% (their fee for collecting the tax). Plaintiffs' Third Amended Complaint does not allege that Defendant Municipalities are not entitled to the tax, only that they must collect it from Defendant Insurers, not the policyholders. (Doc. # 1-1 at 54, ¶¶ 4-7). Thus, it seems that the practical effect of Plaintiffs' requested relief would be to shift the tax from the insurance policyholders to the Defendant Insurers—which, correspondingly, suggests that the Insurers are the real target of the litigation. But it is not so simple, Plaintiffs point out, because the statute also permits the Insurers to receive a fee for collecting the tax. (Doc. # 1-1 at 54 ¶ 6).

Plaintiffs concede that their interpretation of the statutory provisions "creat[es] a potential ambiguity" because it is unlikely that the statute contemplates that the Insurers paying the tax would also retain a percentage of the tax as a "collection fee." (Doc. # 1-1 at 54, ¶ 6). Thus, even if the Court determines that the statute is being improperly interpreted, the correct interpretation, and corresponding relief, remain contested issues. Consequently, which class of Defendants would bear the burden of a ruling in Plaintiffs' favor—and the exact weight of that burden—remains an open question.[4]

These unknowns point to a concern expressed by several courts: Identifying the real targets of litigation often requires a court to wade into the merits of the underlying claim. To adopt Plaintiffs' argument, and hold that Defendant Municipalities (and not Defendant Insurers) are the real targets of the action, the Court would have to assume more than merely that the statute in question has been improperly interpreted and implemented. Rather, the Court would also need to assume that the statute has been improperly implemented for the reasons Plaintiffs say; that the proper interpretation of an ambiguous statute is the one Plaintiffs propose; and, consequently, that the proper relief is what Plaintiffs request.

---

[4] Plaintiffs rely heavily on *Hangarter v. Paul Revere Life Ins. Co.*, No. C 05-04558, 2006 WL 213834 (N.D.Cal. Jan. 26, 2006) to insist that remand is nonetheless required. In *Hangarter*, the court found that the California Insurance Commissioner was a primary defendant, though the relief sought would not require the Commissioner to pay damages, but only to revoke or rescind policies. *Id.* at *2.

While there are similarities between the two cases, they are not so extensive as to persuade the Court to blindly follow *Hangarter*'s reasoning. First, the court there reached its decision in part because the Commissioner was the only defendant who could provide the requested relief to at least one of the claims. *Id.* at *2. That is not true here. Second, the court there found that the Commissioner would bear the burden of any mandamus or quasi-mandamus relief. *Id.* at *3. That is also not true here, where a ruling in Plaintiffs' favor would require the Defendant Insurers to possibly refund the tax, shoulder the tax moving forward, or pay for an extensive and, presumably, expensive accounting. Finally, the court in *Hangarter* observed that the Commissioner would be liable to the entire plaintiff class. *Id.* By contrast, though the members of the classes have not been identified here, it is unlikely that all the members of either Defendant class would be liable to each member of the Plaintiff class.

The second prong of Plaintiffs' argument that Defendant Municipalities are the primary defendants also requires a series of assumptions the Court cannot make at this procedural juncture. Plaintiffs confidently state that Defendant Municipalities are allegedly liable to the vast majority of the members of the proposed classes because "Kenton County and Franklin County may potentially be liable to thousands of policyholders." (Doc. # 23-1 at 8, 10). By contrast, Plaintiffs contend, "[a]n insurance company's connection to either of the Plaintiff Classes is very limited." (Doc. # 23-1 at 10).

At minimum, Allstate's declaration that it alone has 66,138 policyholders in Kentucky who paid a surcharge on their insured risks in 2008 and 2009 pursuant to the tax at issue here calls Plaintiffs' assertion into question. But Allstate's statistic also underscores a larger problem for Plaintiffs: At this stage in the litigation, analyzing which proposed Defendant class would be liable to more members of the Plaintiff class would be an exercise in guesswork—particularly before the members of the classes have been identified and liability between the Defendant classes apportioned.

To complicate matters further, Plaintiffs argue alternative grounds for relief and propose an alternative Plaintiff subclass, both of which would require new sets of factual and legal assumptions. These are assumptions the Court cannot make in adjudicating a Motion to Remand, particularly in this case where Plaintiffs acknowledge that the statute in question could yield multiple, and sometimes contradictory, interpretations and the members of the proposed classes have not been identified.

Concern about wading into the merits of an action merely to determine whether federal jurisdiction exists has led courts to adopt simpler and more direct approaches to

identifying the primary defendants.[5] Thus, in *McClendon v. Challenge Fin. Investors Corp.*, No. 1:08-cv-1189, 2009 WL 589245, at *13 (N.D. Ohio March 9, 2009), the court identified the primary defendants by looking exclusively to the face of the complaint. After reviewing applicable precedent, the court found a "settled judicial understanding of 'primary defendants' as those parties having a dominant relation to the subject matter of the controversy, in contrast to other defendants who played a secondary role by merely assisting in the alleged wrongdoing, or who are only vicariously liable." (citing *Passa v. Derderian*, 308 F.Supp.2d 43, 61-64 (D.R.I. 2004); *Kitson v. Bank of Edwardsville*, No. 06-528-GPM, 2006 WL 3392752, at *17 (S.D. Ill. Nov. 22, 2006)). "The 'secondary defendants' are those parties sued under theories of vicarious liability or joined for purposes of contribution or indemnification." *Id.* (citing *Kitson* at *17). The benefit of this approach is that it "does not require a court to make a pretrial determination of liability or culpability, but rather requires only a review of the complaint to determine which defendants are sued directly." *Id.*

The court in *Anthony v. Small Tube Mfg. Corp.*, 535 F.Supp.2d 506, 515-16 (E.D. Pa. 2007) also held that the primary defendants were those who were directly liable to plaintiffs, as opposed to those defendants sued under theories of vicarious liability or joined

---

[5] Perhaps this concern is why three of the five approaches Judge Russell cited in *Powell v. Tosh*, No. 5:09-cv-000121-TBR, 2009 WL 3484064, at *10 (W.D.Ky. Oct. 22, 2009), require the court to consider only the face of the complaint in identifying the primary defendants: "(1) [W]ho has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of the claims asserted by plaintiffs; *or* (5) is the only defendant named in one particular cause of action." (quoting *Sorrentino v. ASN Roosevelt Ctr., LLC*, 588 F.Supp.2d 350, 359 (E.D.N.Y. 2008) (emphasis added)). The Court in *Brook v. UnitedHealth Grp., Inc.*, No. 06-cv-12954-GBD, 2007 WL 2827808, at *5 (S.D.N.Y. Sept. 27, 2007) appears to have created this list in compiling the "varying approaches" courts have taken to defining the primary defendants, which, lacking a statutory definition, has led to "some incongruency." If nothing more, this list indicates the range of approaches courts have taken.

for purposes of contribution or indemnification. *Id.* (quoting *Kitson* at *17); *see also Laws v. Priority Tr. Servs. of N.C., L.L.C.*, No. 3:08-cv-103, 2008 WL 3539512, at *4 (W.D.N.C. Aug. 11, 2008) (same). *Anthony* did not identify the primary defendants based on which defendants were most able to pay or were most culpable: "These definitions were determined to be unworkable because they would require a degree of fact-finding beyond which could be performed at the procedural juncture." *Id.* (citing *Kearns v. Ford Motor Co.*, Civ.A.No. 05-5644, 2005 WL 3967998, at * 8 (C.D. Cal. Nov. 21, 2005)). Thus, in *Anthony*, the court looked to the face of the complaint and determined that "there are four 'primary defendants' in this action because all four named defendants face direct liability." *Id.* at 517-18.

The Third Amended Complaint contains two counts, both of which assert a claim and demand relief directly against Defendant Insurers. Thus, Defendant Insurers are primary defendants.

Plaintiffs disagree, and vigorously argue that though the Third Amended Complaint does not use the terms, Count I alleges facts that demonstrate that Defendant Insurers are secondarily liable through theories of respondeat superior and vicarious liability. Specifically, Plaintiffs allege that Defendant Municipalities, the masters, acting through local ordinances, ordered Defendant Insurers, the servants, to collect the tax from policyholders. Plaintiffs therefore conclude that only Defendant Municipalities, and not Defendant Insurers, are the primary defendants.

Faced with a similar argument in *Adams v. Fed. Materials Co.*, No. Civ.A. 5:05-cv-90, 2005 WL 1862378, at *5 (W.D.Ky. July 28, 2005), the court looked only to the face of the complaint and found that even though a defendant had been added as a third party

13

defendant, and "*may* be" be ultimately liable on a "theory of indemnification," it was nonetheless a primary defendant under CAFA because "Plaintiffs amended their complaint to assert [the added defendant's] liability directly to Plaintiffs." (emphasis added).

Similarly, Plaintiffs' Third Amended Complaint asserts claims directly against both Defendant classes. In Count I, Plaintiffs allege that "[t]he way that the Defendant *Classes* have interpreted the Statute is that the Insurers collect the tax directly from the policyholders." (Doc. # 1-1 at 57 ¶ 20) (emphasis added). Plaintiffs' requested relief to Count I is for the Court to enter declaratory judgment that the statute "does not permit the Members of *either* Defendant Class to collect from insurance policyholders the Tax." (Doc. # 1-1 at 65 ¶ 4) (emphasis added). Thus, Count I provides no principled distinction upon which this Court could hold that Defendant Insurers are secondary, rather than primary, defendants. If anything, Plaintiffs' request for an injunction requiring "the Tax be paid by the members of the Insurer Class and not passed along as a surcharge to their policyholders" suggests that the Insurers are the primary defendants—to the exclusion of Defendant Municipalities.[6] (Doc. # 1-1 at 65 ¶ 5).

The court's analysis in *Kearns v. Ford Motor Co.,* No. CV 05-5644-GAF, 2005 WL 3967998, at *8 (C.D. Cal. Nov. 21, 2005) (citing *Passa*, 308 F.Supp.2d at 62), is also instructive because it defined primary defendants as any defendant "with direct liability to

---

[6] The Court need not, and does not, reach the question of whether Defendant Municipalities are also primary defendants. As described *infra*, Part II(D), the Court's determination that Defendant Insurers are primary defendants precludes the application of any of the three CAFA exceptions at issue here. That is, because Defendant Insurers are primary defendants, *all* the primary defendants do not satisfy the conditions of the CAFA exceptions, as required.
    Neither the parties nor the Court's research suggests that identifying one or more defendants as a primary defendant precludes the remaining defendants from also being primary defendants. In *Anthony*, 535 F.Supp.2d at 518, the court found that all four defendants were primary defendants because all four defendants faced direct liability.

14

the plaintiffs," then applied this definition to facts comparable to those in this case. In *Kearns*, plaintiffs alleged that the automobile manufacturer and its dealerships misled consumers about the nature of a pre-owned certified car program, thus artificially increasing the price of certain used cars. *Id.* at *2. Like Plaintiffs' allegations against the Municipalities here, the manufacturer in *Kearns* was "responsible for the program's design and creation." *Id.* at *8. And, like the Insurers who collect the tax in this case, the dealerships in *Kearns* were "more directly involved in each [certified pre-owned] certification and sale" than the manufacturer. In short, as Plaintiffs argue is the case here, in *Kearns* the manufacturer created and controlled an allegedly illegal program, which the dealerships implemented. In *Kearns*, because there was "nothing in the pleadings to distinguish among the defendants," the court determined that both the manufacturer and franchises were "potentially directly liable to the plaintiff class," and were both, therefore, primary defendants. *Id.* at *8. Similarly, Defendant Insurers are primary defendants in this case.

Count II also provides an independent basis for determining that Defendant Insurers are primary defendants.[7] Plaintiffs allege, as an alternative to Count I, that the Municipal class enacted the ordinances in accordance with KRS § 91A.080, but that the Insurer class improperly collects the tax. (Doc. # 1-1 at 58 ¶¶ 24-25). Consequently, Plaintiffs request an accounting funded by Defendant Insurers. These allegations unambiguously demonstrate that Defendant Insurers are being sued directly in Count II and are, therefore, primary defendants in this action.

---

[7] In *Moua v. Jani-King of Minn., Inc.*, 613 F.Supp.2d 1103, 1109 (D.Minn 2009) the court determined that a defendant who was not named in all counts of a complaint was nevertheless a primary defendant because it was "alleged to be directly liable in a *significant number* of the asserted claims." (emphasis added). Thus, a finding that Defendant Insurers are primary defendants in one of the two counts is sufficient to hold Defendant Insurers primary defendants in the action at large.

### D. No Exceptions, Mandatory or Discretionary, Divest this Court of Jurisdiction

The Court need not continue on to determine the citizenship of future members of the Insurer class or whether members of the Municipal class are also primary defendants, because the plain language of CAFA requires that *all* of the primary defendants satisfy the relevant condition for the exception in question to apply. *Kendrick*, 2007 WL 1035018, at *5; *see also Frazier v. Pioneer Ams. LLC*, 455 F.3d 542, 546 (5th Cir. 2006) (determining that "[t]he plain text of § 1332(d)(5)(A) [the state action exception], using the definite article before the plural nouns, requires that all primary defendants be states"); *Powell,* 2009 WL 3484064, at *10 (holding that the discretionary exception [§ 1332 (d)(3)] requires that "all the primary defendants must be from the State in which the action was originally filed"); *Anthony*, 535 F.Supp.2d at 515 (As "evident from the statute's use of the phrase 'the primary defendants' rather than 'a primary defendant', 'the plain language of the statute [§ 1332 (d)(4)] requires remand only when *all* of the primary defendants are residents of the same state in which the action was originally filed'") (quoting *Robinson v. Cheetah Transp.*, Civ.A.No. 06-0005, 2006 WL 3322580, at *3 (W.D. La. Nov. 14, 2006)).

The home state and discretionary exceptions require, in pertinent part, that "the primary defendants are citizens of the State in which the action was originally filed."[8] §§ 1332(d)(4)(B), 1332(d)(3). Because at least one primary defendant (and in this case, all three primary defendants: Allstate, AIC-Hartford, and Standard Fire) is not a citizen of Kentucky, the state in which this action was originally filed, neither exception divests this

---

[8] The single difference between the relevant portions of the exceptions is that the home state exception has a comma between the word "defendants" and "are."

Court of jurisdiction. Similarly, the state action exception requires that "the primary defendants are States, State officials, or other governmental entities." § 1332(d)(5)(A). Because at least one primary defendant (and, again, in this case all three primary defendants) is not a state, state official, or other governmental entity, the state action exception also does not apply to divest this Court of jurisdiction.

## III. CONCLUSION

For the foregoing reasons, the Court has CAFA jurisdiction over this action, and **ORDERS** that Plaintiffs' Motion to Remand (Doc. # 23) be **DENIED**.

This 2nd day of February, 2011.

Signed By:
*David L. Bunning*
United States District Judge

G:\DATA\ORDERS\Cov10\10-156- Deny Mot to Remand[V2].wpd